**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 3:17cr49 |
| | ) | Hon. John A. Gibney |
| **PATRICK FALTE,** | ) | Sentencing: September 15, 2017 |
| **Defendant.** | ) | |

<u>**DEFENDANT'S AMENDED POSITION ON SENTENCING AND
REQUEST FOR A NON-GUIDELINE SENTENCE**</u>

COMES NOW the defendant, Patrick Dane Falte, by counsel, Carolyn V. Grady, and files this Amended Position on Sentencing and request for a non-guideline sentence pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Section 6A1.3 of the advisory United States Sentencing Guidelines ("USSG" or "Guidelines").

The only amendment to the Position is to page 14 where a mathematical error was corrected in the first paragraph of Section 6. The number 63 was changed to 53 and the rest of the Position remains unedited but for that correction.

Mr. Falte has received and reviewed the Presentence Report ("PSR") and notes no corrections or objections to the Presentence Report, which guidelines suggest the imposition of a life sentence and a special assessment of $100. PSR ¶ 75. The special assessment of $5,000 per 18 U.S.C. § 3014 is not appropriate, as Mr. Falte is clearly indigent. PSR ¶¶ 5, 79. The fine of at least $50,000 is not also appropriate due to his financial condition. PSR ¶ 82.

After consideration of all of the evidence, this sentencing position and the filings from the United States, and the sentencing factors of 18 U.S.C. § 3553(a), Mr. Falte requests that the Court impose a sentence of 30 years (360 months) as this sentence is sufficient and not greater than necessary to achieve the goals and objectives of the sentencing statute.

In support, Mr. Falte submits the following:

**Case History**

On October 3, 2016, Mr. Falte and his co-defendant were arrested in Prince William County on a Criminal Complaint Pending in Tennessee. ECF No. 1. The United States Attorney for the Eastern District of Virginia also filed a Criminal Complaint. ECF No. 4. On October 4, 2016, Mr. Falte appeared before a United States Magistrate Judge for his initial appearance on the Criminal Complaint at which time he was detained. ECF Nos. 3, 6. On that same date, the United States dismissed the pending complaint in Tennessee. On October 6, 2016, Mr. Falte waived his preliminary and detention hearings, thereby agreeing that there was probable cause for the crimes as charged and he did not argue for release. ECF Nos. 16, 18. Mr. Falte has remained detained since his arrest on October 3, 2016.

On May 4, 2017, the United States filed a one count Criminal Information charging him with Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. § 2241(c). PSR ¶ 1. This crime carries a mandatory minimum sentence of 30 years imprisonment. On May 10, 2017, Mr. Falte accepted responsibility for his actions, waived his right to indictment by grand jury and pled guilty to the Criminal Information. PSR ¶ 2; ECF No. 47. By waiving all of these rights, Mr. Falte saved the United States the expense and effort of putting on evidence before a grand jury: he also saved the members of the grand jury from seeing the images and hearing of the nature of his crime.

As part of the plea agreement, the United States and Mr. Falte agreed to a sentencing range: the United States agreed to recommend a sentence of no greater than 50 years and Mr. Falte reserved the right to argue for the mandatory minimum. PSR ¶ 3. Both the government and Mr. Falte strongly urge the court to sentence him within the range of 30 to 50 years. PSR ¶ 84.

In summary, Mr. Falte requests that he be sentenced to the mandatory minimum 30-year sentence followed by a lengthy period of supervised release. This sentence is a substantial term –

greater than the number of years he has been alive – and is sufficient but not greater than necessary to accomplish the goals of the sentencing statutes. This is a long sentence for his first arrest for any criminal conduct and will incarcerate him until he is almost 60 years old.

The sentencing is scheduled for September 15, 2017.  PSR ¶ 2.

## **Legal Framework**

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a).  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *id.* at 49-50, and explain how the facts relate to the purposes of sentencing.  *Id*. at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011).  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43. After listening to the parties' arguments as to the appropriate sentence, a sentencing judge must look to the other sentencing factors delineated under 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by the parties. *See Gall*, 552 U.S. at 49. The other factors courts must consider when imposing the appropriate sentence are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment, *id.* at §3553(a)(2); the kinds of sentences available, *id.* at §3553(a)(3); the need to avoid unwarranted disparity among defendants with similar records and conduct, *id.* at §3553(a)(6); and the need to provide restitution to any victims

of the offense, *id.* at §3553(a)(7). The overarching admonition of 18 U.S.C. §3553(a) is that courts are obliged to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection."

**Argument under 18 U.S.C. § 3553(a)**

**1. Given the Nature and Circumstances of Mr. Falte's Offense and His History and Characteristics, the Sentence Requested Is Sufficient, But Not Greater Than Necessary, to Satisfy the Purposes of Sentencing.**

In enacting the Sentencing Reform Act ("SRA"), Congress did "not favor [] one purpose of sentencing over another," except that rehabilitation was not to be a reason to impose a sentence of incarceration. *See* S. Rep. No. 98-225, at 67 (1983). Rather, "each of the four stated purposes should be considered in imposing sentence in a particular case," and "one purpose of sentencing may have more bearing on the imposition of sentence in a particular case than another purpose has." *Id*. at 68. In choosing what kind of sentence to impose, the court must consider all of the purposes and factors set forth in § 3553(a) and impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing.

**2.     Nature and Circumstances of Patrick Falte's Offense**

It is clear from the evidence that Patrick "Dane" Falte committed a crime for which there is no excuse and little way to mitigate. This sentence will not reduce the victim's injuries nor will it take away her pain. The only issue left is what the appropriate punishment for Mr. Falte's actions and whether the court should impose the mandatory minimum or a sentence ten or twenty years beyond that extremely long sentence. This sentencing is about what is sufficient but not greater than necessary and a 30-year sentence will serve the interests of justice.

One mitigating factor that the court should consider regarding the offense is that on the same day of his arrest, within hours, Dane confessed to his crimes and did what he could to mitigate his harm to others. Following his arrest, Dane agreed to remain incarcerated while the

United States and his counsel consulted and determined the charge or charges to which he would plead.[1] Accordingly, when the United States filed the Criminal Information, Dane pled guilty, thereby saving the victim and her family from testimony and the United States from the time and expense of trial.

In terms of punishing the most culpable parties involved in this case, it is important to note that Mr. Hix, the codefendant who has not yet been prosecuted by the United States, allowed his daughter to be repeatedly abused. ECF No. 53, ft 2. The other codefendant, Mr. Faulker, has another "touch offense" charge currently pending in Texas. This charge is Mr. Falte's only "touch offense." Justice dictates that Mr. Falte receive a lesser sentence when comparing his actions to the actions of the other offenders in this case. PSR ¶ 8.

### 3. Mr. Falte's History and Characteristics

Dane is a 27 year old young man who has been tortured by his thoughts since he was a young child. Dane comes from a good family as evidenced by Attachments A to C. PSR ¶¶ 62-63. He has never been married, has no children and has lived with his parents for his entire life. PSR ¶¶ 62-64. In fact, Dane has never really had a girlfriend or close companion. After persevering through school with a learning disability, childhood depression issues and a serious medical condition, Dane graduated from high school and attended ITT Tech where he obtained a technology degree that helped him attain a good well-paying job. PSR ¶ 75. The PSR indicates that Dane has a strong employment record in Network Security where he earned $69,000 last year. PSR ¶¶ 76-79. Dane has never been arrested - not as a juvenile or an adult - he was issued one ticket for a traffic infraction. PSR ¶¶ 53-59. Even though he appears to have been

---

[1] Not that release was likely or even possible but Mr. Falte did not waste anyone's time pursuing that option.

reasonably successful in life, he clearly was a troubled young man, evidenced by his wish to die when only an eight-year-old child.

In the past few months, Dane was examined by Dr. Boyd of the University of Virginia Forensic Clinic of the Institute of Law, Psychiatry and Public Policy. Dr. Boyd evaluated and tested Dane and produced a 19 page Psychological Evaluation, hereinafter referred to as "the Evaluation." [2] Dr. Boyd diagnosed him with Major Depressive Disorder and Pedophilic Disorder. Evaluation, pp. 10-11.

The major depressive disorder diagnosis is no surprise to his family as it appears clear from the Evaluation, the PSR and the supportive letters that he has been clinically depressed his entire life. Dane had such a deep depression that he wanted to die when he was just a child. How bad could his life have been at approximately age 6 to 8 to tell his mother that he would be better off dead? Evaluation, p. 5. Adding to his complicated and painful background, as a young teenager, Dane was violently victimized by an adult male but never felt able to speak about it until recently.[3] He was never able to process the pain, the shame, the anger, or the emotions associated with that violent act and how it harmed his psyche.

Dane first tried to kill himself when he was 19, probably related to his growing concern that "I aged but my attraction may not have." Evaluation p. 5. The Vanderbilt Hospital records indicate that he was "guarded" and spoke in vague terms about feelings of intense guilt and the urge to punish himself. *Id.* Sadly, he did not accept any treatment for his mental and emotional

---

[2] This Evaluation should help the court better understand the background and mental disorder that Dane suffers from as well as outlines the risk factors and other factors that should be considered by the court before sentencing. A copy of this Evaluation is not attached to this Position on Sentencing due to the private nature of the information therein. A copy will been provided to chambers, United States Probation and the United States Attorney.
[3] It is important to note that Mr. Falte does not blame his condition on this sexual assault. As the Evaluation describes, it appears that it influenced his thought process but did not create the attraction. Evaluation, pp. 8-9.

pain as he told Dr. Boyd that he was aware of the stigma attached to his pedophilic interests and he was fearful of the consequences. *Id.* As a younger teenager, he also engaged in "cutting" himself which releases internal pain while at the same time inflicting physical pain. PSR ¶ 73. Dane also tried to kill himself in the Northern Neck Regional Jail this fall, motivated again by self-loathing and fear. Evaluation, p. 5; PSR ¶ 72.

As the Evaluation reveals, Dane was a young adult whose life has been dominated by self-loathing over what was going on inside his head. He hated himself for not outgrowing his attraction to children and could find no way to deal with this intense self-loathing. Evaluation, p. 5. He has had suicidal ideations on and off for many years. Evaluation, p. 6. As noted before, he tried to kill himself about 7 years before his conduct in this case. Dane also tried to numb his unwanted feelings through alcohol abuse or abuse of the pain medications he was prescribed as a child for his serious medical issues. PSR ¶ 74. This self-hatred coupled with major depression permeated his life and are factors that the court should consider as primary factors in his background and his characteristics.

The Evaluation contains several important conclusions that the Court should recognize before imposing sentence. First, Dr. Boyd noted that Mr. Falte's lack of defensiveness about his cognitive distortions "may bode well for his amenability to treatment." Evaluation, p. 8. Second, his willingness to engage in sex offender treatment and the PAI results "suggest that he is amendable to psychological treatment." Evaluation, p. 10. Third, Dane is not anti-social, or psychopathy, but rather is on the autism spectrum disorder and someone that has suffered Major Depressive Disorder his entire life. Evaluation, pp. 10, 14. In essence, the testing results do not indicate a high risk of reoffending and that he is amenable to sex offender treatment to further reduce his risk upon his release. Evaluation, p. 16. Lastly, Dr. Boyd made an observation that the court should note at the time of allocution – "Superficially he appears to be flat, emotionally,

7

and has a deadpan communication style, however his history, testing, and verbal statements indicate that he has strong emotional reactions that are not outwardly conveyed. Thus, he may appear unconcerned or emotionally neutral when he is in fact distressed." Evaluation, p. 17.

An insightful article published in Psychology Today in December 2015, entitled "Sympathy for the Deviant" ("Sympathy Article") outlines the life and difficulties of someone who had an attraction to younger boys and who acted on his thoughts. See Attachment F. The Sympathy Article illustrates some of the difficulties and pitfalls of someone who has the unwanted attraction to children. This Article provides examples of the "intense stigma surrounding child sexual abuse clouds an already misunderstood subject and may even prevent people from getting help before they commit harm." The relevance of the Sympathy Article is that the secret attraction of the subject of the article is the same attraction that Dane suffers from and the article outlines the struggles which "leaves no opportunity for intervention, let alone empathy for whatever internal struggle they be engaged in to control themselves." Sympathy Article, p. 85. The author notes that people with attractions to children have no "reality check" to bounce up against due to their isolation. Their shame and isolation feeds the risk of acting out as they have no one to share their feelings with or get feedback about their thoughts or actions. These offenders have no one to go to for help – and society never offers them hope of a cure such as is evident with drug addicts, those with gambling issues or eating disorders or have HIV. Society offers help, treatment or community support for those folks. However, "[p]eople attracted to juveniles also internalize the message that they can't be cured" as they are not offered any hope or guidance in society. Thankfully, Dane has received some helpful information through the evaluation process. He now knows that he can get the help he so desperately needs and Dane looks forward to trying to heal himself and find a way to never offend again.

Dane's family have expressed their love for Dane in spite of his actions and will continue to support him throughout this difficult time in his life. See Attachments A to C. They all wrote that he is a generous person who gave of himself to his family, friends and neighbors. To them, Dane appeared to be a happy, funny, loving person – no one knew about the thoughts and actions that surfaced on and before October 3, 2016. Dane was so good at separating himself from his family that they were never able to see his thoughts, his torment or his pain.

His mother Patricia Falte wrote an insightful letter about how her son struggled all of his life with a secret he could not reveal to anyone. See Attachment A. She never understood why he was secretive about his feelings – she now knows why and still loves him, faults and all. PSR ¶ 66. Patricia noted how his medical condition and chronic abdominal pain separated him from his peers. She also noted that his learning disabilities set him apart as well. She now looks back at her son's childhood pictures and sees his pain and depression in his eyes, even though his smiled. Since his arrest, his mother has learned more about her son than any mother wants to know – she learned why Dane was a loner. PSR ¶ 66. She learned of his pain, his actions and now his shame. She wrote that Dane has expressed remorse and feels ashamed and embarrassed and not worthy of her love. She will pray for him every day that he gets the help that he so desperately needs.

His father Pete Falte wrote how he was blindsided with these charges as he had never seen this side of his son – Dane was always kind, generous son that was always helping his friends, neighbors and teachers with their computer problems. See Attachment B. He shared that his son had dreams of college and "eventually joining the military or the FBI to work in network security and to fight computer hacking." He was just that smart. His father outlined the efforts that Dane took to overcome his medical disabilities and make it to a successful job. He believes that Dane can use this same kind of effort to overcome his mental disorder. Dane has told his father that he feels sorry for his crimes and causing harm to others. Dane told his parents that he

wants help dealing with the thoughts that led to his actions. His dad knows that there is a part of his son that needs help and will be punished for his crimes but he remains supportive and loves his son: Pete Falte is asking for a chance for his son for some type of future outside of prison.

His sister Christa wrote about how Dane struggled all of his life in one way or another. See Attachment C. She has always known him to be a comfort to her during their childhood struggles and he was the ideal older brother who always protected her. Christa noted that he always seemed to suffer from depression but that he persevered through those low times. She called Dane resilient and believes he will overcome this huge obstacle as he has overcome other significant issues in his life. She trusts that he will get the help that he needs so that he can be the person she knows him to be: a generous, considerate and kind person. She wrote that despite his grave mistakes, she believes "him to be the wonderful and caring person he has always proven himself to be."

Another important aspect of Dane's characteristics to consider is that it is clear that Dane suffers from the mental disorder of Pedophilic Disorder. See Evaluation, p. 11. This is a lifelong disorder but he can be refocused so as to not act on his thoughts and attractions – something that he has never done in the past. As noted in the DSM 5, "[p]edophilia per se appears to be a lifelong condition" but the course of pedophilic disorder (acting on the attraction) may fluctuate, increase or decrease with age. See DSM 5, page 699. As Dane told Dr. Boyd, he knew that these feelings that were not normal but had no ability to receive counseling or help to control his attraction. Dane was caught in a world no one wishes to be contained by – that he had this attraction but could not seek counseling or assistance due to the stigma attached to this disorder as well as the mandatory reporting requirements for any counseling he could have received.

The Evaluation and PSR outline the isolation that Dane has always felt since childhood. He was isolated from his peers, either through his constant medical condition or by self-

selection. His Crohn's disease caused him physical pain from a young age and constant difficulties and surgeries complicated his high school years. PSR ¶¶ 67-68. His thoughts and feelings also forced him to separate himself and go to the "dark web" to talk about his issues and find some sort of comradery among like-minded people. PSR ¶ 73. In 2015, Dane was part of an on-line community-based support group to help others in his position to talk about their issues. Dane told the agents that he had wanted to "quit" the website, and some computer evidence bears out this desire. Sadly, he did not do so before he offended against the victim in this case.

Dane told the probation officer that he is deeply remorseful for his actions. Dane told his family that he is sorry for what he did and remains concerned about how this conviction will affect their lives. PSR ¶¶ 35, 66.  He will tell the court that he remains remorseful and will live the rest of his life trying to be good to others so that he can try to make up for the damage he created.

### 4. Need for Just Punishment in Light of the Seriousness of the Offense

Section 3553(a)(2)(A) requires a sentencing court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. This is obviously a serious offense – but so is a thirty-year sentence for a 27-year-old young man. Since Dane had never been arrested prior, and will serve a sentence into his 60s, this will promote his respect for the law. This 30-year sentence also provides just punishment as it is practically a life sentence but gives him some hope of reuniting with his family upon his release.

Further, this sentence will be particularly difficult for Mr. Falte because Dr. Boyd believes that, due to Mr. Falte's PAI results and history, there are indications that he would be unusually vulnerable to exploitation and abuse in the prison environment; even aside from the targeting that will occur based on the nature of his conviction. This vulnerability is compounded, Dr. Boyd noted, when his prior sexual history is taken into account. Evaluation, p. 17. In short,

11

every day of his sentence will be dominated by his fear from physical attack: 30 years of that would be enough for anyone, much less Mr. Falte with his more fragile medical condition.

Also, Mr. Falte will suffer physically more than the average inmate given his complex medical condition and the inadequate medical care within the Bureau of Prisons. A 2015 audit by the Department of Justice's Office of the Inspector General reviewed the Bureau of Prisons' handling of its aging inmate population ("2015 Audit").[4] The 2015 Audit reveals that in the seven years since the BOP's inmate healthcare was last investigated in 2008, little has changed. *See* 2015 Audit, page 21. There is little reason to believe things have improved since the 2015 Audit if nothing changed on those eight years between the audits. The BOP has continued struggling to provide adequate healthcare and safe accommodations, particularly to its aging inmates. The 2015 Audit found that inadequate staffing in Health Services Units as well as throughout BOP institutions leads to delays for care. A Case Worker at a non-medical BOP institution reported to the auditors that the institution was "over a thousand inmates behind" in treating those enrolled in chronic care clinics. *Id.* at 17. This lack of healthcare workers inside BOP institutions leads to a greater need for outside medical visits. *Id.* at 18. These visits are limited as well by the availability of Correctional Officers, resulting in further waitlists for medical care. *Id*. At one institution, the Associate Warden told the auditors that his staff can only accommodate six trips to outside medical specialists per day, even though the inmate population requires eight to 10 trips per day. *Id.* BOP data from another institution found that the average wait time for inmates needing to see outside specialists like cardiologists and pulmonologists for follow-up and routine appointments was 256 days or almost 10 months. *Id.* If anything goes awry with treating Mr. Falte's Crohn's disease, such as a delay in medical treatments, it very

---

[4] This audit can be found at https://oig.justice.gov/reports/2015/e1505.pdf. It was not attached to this Position, as it is 72 pages long.

12

well could be fatal. See Doctor's Letter, Attachment E. In summary, all of the inadequacies within the BOP's medical facilities will constitute a greater punishment and should be considered by this Court.

### 5. Need for Adequate Deterrence

Section 3553(a)(2)(B) requires a sentencing court to impose a sentence that affords adequate deterrence to criminal conduct. There is no more deterrence to an individual than to receive a sentence greater than the number of years he has been alive. For someone who has never spent a day in jail prior to October 3, 2016, a thirty-year sentence will be sufficient. Certainly, an additional 20 years would incarcerate him longer but would provide no additional deterrence than the first 30 years. With the programing he will receive in the Sex Offender Program within the BOP, he will learn from his past and minimize any chance of any offending conduct upon his release.

The empirical evidence is unanimous that there is no relationship between sentence length and general deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.").

### 6. Need to Protect Society

Section 3553(a)(2)(C) requires a sentencing court to impose a sentence that protects the public from other crimes of the defendant. With a thirty-year sentence, Mr. Falte could be released in 26 years if he earns all of the good time credits- he would be 53 years old and well past the age of offending given the restrictions that will be placed upon him upon his release. If given a fifty-year sentence, he could be released in 43 years with good time credits and he would be 70 years old upon his release. No one in society would be in danger from him at either age and thus the thirty-year sentence is sufficient and not greater than necessary.

According to the United States Sentencing Commission ("USSC"), recidivism rates in general (including technical supervised release violations) "decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders age 41 to 50 and down to 9.5% for offenders over 50.  USSC, *Measuring Recidivism*: *The Criminal History Computation of the Federal Sentencing Guidelines*, (2004), at 12 and Ex. 9.

Further, the Evaluation reports that Mr. Falte is at a Moderate to Low risk of reoffending given his risk scores and that a longer sentence does not mean he will be less of a risk upon his release. Evaluation, p. 13-4. In short, Mr. Falte is a low risk offender, even with the nature of his crime, this court does not need to incarcerate him longer to protect society. See Evaluation, pp. 17-18.

### 7. The Kinds of Sentences Available and the Guidelines

Section 3553(a)(3) requires the court to consider the kinds of sentences available. The conviction to which Mr. Falte pled carries a maximum of 30 years to life in prison. PSR ¶¶ 37 to 49. The court is not required to sentence Mr. Falte to life imprisonment - but rather must begin consideration of the appropriate sentence at the 30-year mark.

Section 3553(a)(4) requires the court to consider the guidelines and the range established by the guidelines. The guidelines suggest a life sentence but both the United States and Mr. Falte agree that a sentence from thirty to fifty years is appropriate. In spite of the crime committed, the United States still recommends a sentence within that range. As stated throughout the Position, a 30 year sentence is sufficient and not greater than necessary to accomplish the goals of 18 U.S.C. §3553(a).

**8. The Sentencing Commission's Report to Congress on Life Sentences**

As the Court is aware, the United States Sentencing Commission issues reports on a variety of issues. One such report is the Report on Life Sentences published in February 2015 ("the Report").[5] This Report analyzes which kinds of offenders have received a life sentence, for what crimes and the total number imposed in the United States. Specifically, the Commission noted that the life sentence is only mandated in four of the 150 crimes outlined in the USSC Guidelines Manual. That is to say, the USSC recognizes that there are only four types of crimes that automatically mandate a life sentence: sexual abuse is not among those four. Report, p. 3. The Report also details the number of life sentences imposed in fiscal year 2013 – 153 cases – and 68% of those sentences were imposed after a trial. Report, p. 9. As the court is aware, Mr. Falte pled guilty and saved the resources that would have been spent preparing for trial. As of January 2015, there were 4,436 prisoners incarcerated for life sentences - accounting for 2.5% of all federal offenders. Report, p. 4. Thus, statistically, a life sentence is rarely imposed, and usually imposed on a defendant who went to trial. Further, the United States is not asking for a life sentence but rather a sentence of 50 years which the United States believes will cover the rest of Mr. Falte's natural life.

---

[5] This Report is 29 pages long can be found at https://www.ussc.gov/research/topical-index-publications#life.

Most importantly, the Report analyzed 'de facto' life sentences and concluded for the purposes of analysis, a sentence of 39.1 years (470 months) is the equivalent of a life sentence.[6] Report, p. 10. These 'de facto' life sentences have been imposed in sex abuse cases, and only account for just 1.4 % of all sex abuse sentences. Report, p. 11.  The recommendations of Mr. Falte and the United States are 10 years over and under from this 'de facto' life sentence.  This court should feel comfortable with the harshness of a 40 year sentence as that is just above a 'de facto' life sentence as calculated by the USSC.

**9.  The Need to Provide Medical, Educational and Vocational Assistance**

This Court must consider the medical, vocational and educational needs of the defendant before issuing the sentence and the court cannot lengthen any sentence to provide such treatment or training.

In this case, Mr. Falte has significant medical issues that must be attended to by the highest level BOP medical facility. PSR ¶¶ 67-68. Any mistreatment or delay in treatment could lead to his death. See Attachment E. As this Court should be aware from the 2015 Audit, the BOP is sorely lacking in the number of capable physicians and consistent medical care, and is replete with delayed treatment of serious but not acute medical conditions. Mr. Falte's conditions are acute if he is not given his medically prescribed treatments. Therefore, Mr. Falte requests that the Court recommend that he be designated to a facility that provides the highest level of medical care.

Finally, Mr. Falte requests that the Court place in the Judgment and Commitment Order that he be designated to a facility close to his family who are relocating to Florida.  Anyone in Dane's situation needs to have the family support to survive this very lengthy sentence.

---

[6] The USSC used a statistical analysis to determine the life expectancy of a federal inmate and calculated it to be 66 years. Report, pp. 16-17.

## Conclusion

Mr. Falte recognizes that his offense conduct is very serious and has affected a real victim. He has done what he can to make amends for his conduct and he will spend at least the next 30 years working to assure that this does not happen again. For his conduct, he will be punished for the rest of his life. Mr. Falte is asking that the Court give him some hope for his future – and temper justice with mercy by imposing a sentence of thirty years followed by a lengthy period of supervised release.

                              Respectfully submitted,

                              PATRICK DANE FALTE

By:    _____/s/_____
           Carolyn V. Grady, Esq.
           Assistant Federal Public Defender
           VA Bar No. 30445
           Counsel for Mr. Falte
           Office of the Federal Public Defender
           701 E. Broad Street, Suite 3600
           Richmond, VA 23219-1884
           Ph. (804) 565-0855
           Fax (804) 648-5033
           carolyn_grady@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record: Jessica Aber, Assistant United States Attorney, and Lauren Britsch and Elham Peirson at the Department of Justice.

/s/
Carolyn V. Grady, Esq.
Assistant Federal Public Defender
VA Bar No. 30445
Counsel for Mr. Falte
Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0855
Fax (804) 648-5033
carolyn_grady@fd.org